DANIEL S. RISINGER *et al.*, plaintiffs in error, *v.* OWEN CHENEY, defendant in error.

*Error to McLean.*

The law is well settled, that he who prevents, or dispenses with the performance of a condition, cannot take advantage of the non-performance. It is equally well settled, that where there are mutual conditions to be performed, and one of the parties has incapacitated himself from a performance on his part, which condition was the consideration of the promise to be performed by the other, that such incapacity will dispense with performance, or an offer to perform, by the other party to the contract.

ASSUMPSIT in the McLean Circuit Court, brought by the defendant in error against the plaintiffs in error. The cause was tried at the September term 1845, before the Hon. Samuel H. Treat, without the intervention of a jury. Judgment was then rendered in favor of the plaintiff below, for the sum of $101·25.

A history of the case appears in the Opinion of the Court.

*A. Lincoln,* for the plaintiffs in error, contended that the main point in the case was, whether the injunction issued was not a sufficient excuse for Risinger and Nye's failure to perform, so as to save the forfeiture of the note. He cited 1 U. S. Dig. 540, § 66.

*J. T. Stuart & B. S. Edwards,* for the defendant in error.

The Opinion of the Court was delivered by

YOUNG, J.* This was an action of *assumpsit,* brought by Owen Cheney against Risinger and Nye to the September

---

*WILSON, C. J., and Justices LOCKWOOD and CATON did not sit in this case.

term 1845, of the McLean Circuit Court, and the damages laid at three hundred dollars. The declaration contains two counts: the first on a promissory note made by Risinger and Nye to Owen Cheney, for the sum of one hundred dollars, dated at Bloomington the 31st day of May, 1845, and payable one month after date; and the second for the sum of one hundred dollars, for interest upon, and for the forbearance of divers large sums of money, &c., before that time lent and advanced to the defendants, &c.

The defendants Risinger and Nye pleaded *non assumpsit,* and issue being joined to the country, the cause was submitted to the Court for trial, without the intervention of a jury, it being agreed by the parties, that all matters of defence which could be given in evidence under special pleas, should be admitted without objection, under the plea of *non assumpsit.*

The plaintiff, Cheney, then read in evidence to the Court, the promissory note described in the first count of his declaration, and rested his case. The defendants, Risinger and Nye, then introduced Zera Patterson as a witness, who testified, that the said note, at the time of its execution, was deposited with him, to be delivered to the plaintiff, Cheney, in the event that Risinger and Nye should fail to comply with their part of a contract entered into between the plaintiff and defendants, on the same day the note was given, for the purchase of a mill, machinery, and steam engine, by the defendants from the plaintiffs; and that upon the maturity of the note, he had delivered it to the attorney of the plaintiff, without any further permission from the defendants. The defendants then produced and read in evidence a bond executed by the plaintiff to the defendants, in the penalty of $200, dated May 31, 1845, with the following condition, to wit: That if the said Risinger and Nye shall, on before the first day of July next, (1845) make, execute, and deliver to the said Owen Cheney, his heirs and assigns, a good and sufficient warranty deed in fee simple to nine acres of land, free from all incumbrances whatsoever; which said nine acres of land is near to the town of Pekin, in Tazewell county,

and was formerly owned by Daniel Dillon; and shall also execute to the said Owen Cheney their promissory notes as follows: One note for $50, payable the 18th day of November, 1845; one note for the sum of $50, payable in twelve months from the date thereof; one note for $50 payable in thirteen months; one note for $75, payable in twenty four months, and one note for $75, payable in twenty five months, from the said date; and shall also deposit with the said Cheney, as collateral security, to secure the payment of the notes aforesaid, a note against Daniel M. Bailey for $250, due on the 18th day of November, 1845; and shall also execute to said Cheney, a bond binding themselves to pay in two years from the 1st day of May, 1845, the principal and interest due by said Cheney, on a mortage executed by him to the State Bank of Illinois, for the sum of $500, with interest from the 1st day of July, 1845; which said mortgaged debt is secured by a mortgage upon the tract of land in McLean county, upon which said steam mill now stands, together with other tracts of land in said county; then and in that case, Cheney shall allow said Risinger and Nye, at their own expense, to erect for him the said steam mill, and all the machinery pertaining thereto, in the same condition the same now is, upon the said nine acres of land near Pekin, as aforesaid; and allow the said Risinger and Nye to use and occupy said mill and machinery without charge or rent for the term of two years from the 1st day of July, 1845; and if the said Risinger and Nye shall well and truly pay, or cause to be paid, the said Bank mortgage with accruing interest thereon according to the conditions of the bond herein before described, as hereafter to be executed by the said Risinger and Nye, to said Cheney; and if the said Risinger and Nye shall also fully comply on their part as herein before mentioned, then the said Cheney shall make, execute, and deliver to said Risinger and Nye a good and sufficient deed to the said nine acres of land, together with said mill and machinery to be erected thereon. Now, if, upon the compliance of the said Risinger and Nye with all the conditions aforesaid on their part to be kept and performed, the said Cheney shall fully

comply with the conditions on his part to be kept and performed, then, and in that case, this obligation to be void, otherwise to become absolute.

(Signed)　　Owen Cheny," [seal.]

The defendants next read in testimony a letter from Cheney to Risinger, dated July 10th, 1845, which is as follows: "Sir—Agreeably to arrangements, I went and saw Mr. Vanscoyac, and got him to go and see them men, and they say that they wont let the mill go, until they have as much land mortgaged, as is unincumbered of theirs; and I am going to see one of my brothers, and see if he wont mortgage his land and take the obligation from you, and I think I can make the arrangements, and if I can, I will let you know all about it in four or five days. I saw Mr. Gibbs, and I am satisfied that their engine can be had for two hundred dollars, the young man said he would advise his father to take that price. I will write as soon as I can ascertain what can be done, which will be in four or five days at the farthest.

(Signed,)　　Owen Cheney."

The defendants then read in evidence to the Court, the record of the proceedings in a Chancery suit in the said Circuit Court, in which William H. Thompson was complainant, and the said Owen Cheney, and one Thomas Cheney were defendants, by which it appeared that for certain reasons mentioned and set forth in the bill of complaint of the said Thompson, the said Owen Cheney, Thomas Cheney, and any purchaser or purchasers, agents, attorneys or workmen under them, were perpetually enjoined from the tearing down, or removal of the said mill, machinery, &c., until the decree made in the said chancery suit should be complied with by the said Owen and Thomas Cheney.

The defendants then called William H. Thompson as a witness, who testified that he was complainant in the said suit in chancery; that Mr. Vanscoyac called upon him before the injunction was applied for, but upon the same day on which the bill was filed, and wanted to know if Cheney could not make some arrangement with him, by which he

the complainant, Thompson, would suffer the said mill to be removed.

He also testified that afterwards, on the 3d day of July, Cheney called upon witness, and made several proposals to witness, to induce him to suffer said mill to be moved, but that witness had never given his consent thereto.

The plaintiff then called Vanscoyac as a witness, who testified, that Cheney did not send him to see William H. Thompson, but that witness went voluntarily, having first told Cheney that he was going for that purpose.

Buck, a witness, also produced and sworn on the part of the plaintiff, testified that on the 3d day of July, when the defendant, Risinger went, as witness understood, to procure the mill, witness heard the plaintiff, Cheney, tell Risinger that he could not have the mill, because his papers were not according to contract; and that Risinger answered that he believed that they were not; that he had forgotten to bring one of them, or words to that effect.

The defendants then introduced Gridley as a witness, who testified that the note, in the declaration described, was given in consideration of the execution of the bond by the plaintiff, and that it was deposited with Patterson, to be delivered to witness Gridley, for the plaintiff Cheney, if the defendants did not comply with the terms of the contract; and if they did comply, it was to be delivered up to the defendants.

This was all the evidence in the case, the defendants not offering to prove on their part either performance, or an offer to perform, and the plaintiffs proving no damages sustained by reason of said non-performance.

Upon this evidence, the Court found the issue for the plaintiff, and gave judgment thereon against the defendants, Risinger and Nye, for the sum of one hundred and one dollars and twenty five cents in damages, and costs of suit.

From this judgment the defendants, Risinger and Nye, have prosecuted a writ of error to this Court, and now assign the following as causes of error, to wit:

1. The Circuit Court erred in not deciding, that the

injunction which restrained the plaintiffs and defendants from removing the mill, was a sufficient excuse for the non-performance of the contract by the defendants; and

2. That the judgment of the Court below should have been for the defendants, and not for the plaintiff.

It appears from the evidence in this case, that the note sued upon was given in the nature of liquidated damages, and deposited in the hands of a third person, to be delivered to the plaintiff, Cheney, if the defendants, Risinger and Nye, should fail to comply with their part of the contract, and the defence set up by the defendants, to avoid a recovery upon it, is failure of consideration. The contract was executory, and was, by the agreement of the parties, to have been executed by Risinger and Nye, on or before the 1st day of July, 1845. They did not perform, or offer to perform, but allege by way of excuse, that they were prevented from availing themselves of the benefit of the contract, by reason of the injunction which had restrained the removal of the mill, and in consequence of which, and the decree in the said suit in chancery, the plaintiff had become incapacitated from complying with his part of the contract.

It was contended at the hearing on the part of the plaintiff, that as the defendants had knowledge of the existence of the mortgage to the Bank, and had themselves agreed to execute a bond to the plaintiff for the payment of the principal and interest, due by the mortgage, in two years from the 1st day of May, 1845; and that as the injunction, which prevented the removal of the mill, was the consequence of that mortgage, and occasioned, also, by the intention of the parties to remove the mill from the lands thus mortgaged, and that as the defendants, by paying the money due to the Bank, could at any time have released the mill from the incumbrance upon it, they could not rightfully insist that the plaintiff was in default; and that, consequently, they were not discharged from their liability for not having performed, or offered to perform their part of the contract.

This position is not tenable. Risinger and Nye did not assume the debt of Cheney at the Bank, so as to take upon

themselves the burthen of discharging the land from the incumbrance of the mortgage; and had no reason to expect that any difficulty, growing out of the conduct of Cheney, would have prevented the removal of the mill at the time limited by the contract. They were to execute a bond to Cheney to pay the principal and interest accruing on the mortgage debt to the Bank, in two years from the 1st of July, 1845; but were not answerable for the consequences, when the injunction was first obtained, or subsequently, when it was made perpetual.

They had a right, therefore, to insist that the consideration for which the note in question was given, had entirely failed, and that no recovery could be had upon it. The letter of the plaintiff to the defendant, Risinger, of July 18th, 1845, shows that he was endeavoring to remove the injunction by procuring his brother to mortgage his lands, and to take the obligations from the defendants; and that he did not consider the defendants bound to deliver those obligations until this difficulty was removed; and the testimony of Thompson amply justifies this conclusion.

The law is well settled, that he who prevents, or dispenses with the performance of a condition, cannot take advantage of the non-performance. And it is equally well settled, that where there are mutual conditions to be performed, and one of the parties has incapacitated himself from a performance on his part, which condition was the consideration of the promise to be performed by the other, that such incapacity will dispense with performance, or an offer to perform, by the other party to the contract. 2 Bibb, 218; *Williams* v. *U. S. Bank*, 2 Peters, 102; 1 Bibb, 380; 2 do., 431; 3 J. J. Marshall, 690; *Seymour* v. *Bennett*, 14 Mass. 266; *Badlam* v. *Tucker*, 1 Pick. 287.

We are therefore of opinion, that as both the parties were prevented from performing their several undertakings to each other, by reason of the injunction which was issued at the suit of Thompson, that Cheney is to be regarded as the person in default, by having permitted the continuance of the injunction and decree, so as to prevent the removal of

the mill, that the consideration of the note has failed, and that Cheney ought not be permitted to recover upon it against the defendants, Risinger and Nye. Judgment reversed, with costs.

*Judgment reversed.*