**MacARTHUR PARK CORPORATION, Appellant,**

v.

**Howard A. SUNSHINE, Individually, and d/b/a Sunshine Exploration Company, Appellee.**

No. 9026.

Court of Civil Appeals of Texas, Amarillo.

Oct. 26, 1979.

Winstead, McGuire, Sechrest & Trimble, W. Ted Minick, Dallas, for appellant.

Joe B. Burnett and Taylor, Mizell, Price, Corrigan & Smith, Edward V. Smith, III, Dallas, for appellee.

DODSON, Justice.

Howard A. Sunshine, individually and d/b/a Sunshine Exploration Company, a

mortgage broker, brought this action to recover certain brokerage fees and attorney's fees under a written agreement with MacArthur Park Corporation. The bench trial resulted in a judgment in favor of Sunshine for the sum of $21,900 plus post judgment interest. MacArthur appeals from this judgment. We modify the judgment and as modified, affirm.

MacArthur is the owner of a medical-dental complex in Irving, Texas. The complex is designed for specialty space rentals to doctors and dentists. The building phase of the project began several months before MacArthur engaged Sunshine to find permanent financing for the complex.

On 11 July 1974, the parties entered into a mortgage brokerage agreement. In this agreement, MacArthur designated Sunshine its exclusive agent and representative for the purpose of procuring a loan commitment for permanent financing on the complex. A pertinent part of the agreement provides:

> It is expressly agreed and understood *that the sole obligation* of Sunshine Exploration Company under this Agreement *is to seek to find a LENDER ready, willing and able to consider making a LOAN COMMITMENT to the BORROWER* consistent with the provisions of this Agreement, and at such time the BORROWER shall execute a formal application to said LENDER(s), providing whatever information the LENDER(s) requests, and that the entire cash fee hereinafter agreed to will become due and payable to Sunshine Exploration Company upon its furnishing the undersigned with a writing from such a LENDER evidencing its willingness to make said LOAN COMMITMENT. (Emphasis added).

Sunshine maintains that he performed his obligation under the agreement by seeking to find and presenting to MacArthur at least two lenders which were "ready, willing and able to *consider* making a loan commitment to the borrowers." (Emphasis added). MacArthur says Sunshine is not entitled to recover because he failed to comply with an alleged condition precedent in the agreement requiring him to furnish "a writing from such a lender evidencing its willingness to make said loan commitment." Sunshine counters that the provision relied on by MacArthur is not a condition precedent to liability under the agreement but assuming arguendo that the provision is a condition precedent, then nonperformance in this regard is excused because MacArthur failed to promptly apply for and pursue the loans.

The evidence shows that Sunshine prepared a loan package from information furnished by MacArthur and contacted several lenders concerning permanent financing for the project. Sunshine testified that from these contacts he found lenders which were willing to consider making a loan to the appellants. He presented the loan quotations from these lenders to the president and owners of MacArthur at a meeting on 10 August 1974. The details of the quotations from the lenders were set forth in a letter dated 9 August 1974, which was delivered to MacArthur at the August 10 meeting.

One of the lenders was identified as Lincoln Liberty Life Insurance Company. Sunshine testified that on 13 August 1974 George Pelletier, the president of MacArthur, told him to go ahead with Lincoln Liberty Life. A formal loan application executed by MacArthur was necessary, however, to pursue the Lincoln Liberty Life loan.

Sunshine further testified that the mortgage loan market was volatile and subject to change on a daily basis. His testimony also shows that during the period from 16 August 1974 to 4 September 1974, he had nine telephone conversations with Mr. Pelletier personally, 30 conversations with his office and one meeting with Mr. Pelletier. He said the purpose of these conversations was "to get them off dead center so they would execute a formal application on a firm quotation received by Lincoln Liberty Life." MacArthur made formal application for the Lincoln Liberty Life loan by a letter dated 17 September 1974, but Lincoln Liberty Life did not grant the loan commitment on the project.

■ In general, a mortgage broker is deemed to have performed his contract and is entitled to compensation when he has produced a lender who is ready, willing and able to lend on the terms sought by the broker's principal. *See* 12 Am.Jur.2d *Brokers* § 183 (1964) and the cases cited under note 8. In the contract before us, the parties specifically agreed *"that the sole obligation* of Sunshine Exploration Company under this Agreement *is to seek to find a LENDER ready, willing and able to consider making a LOAN COMMITMENT to the BORROWER."* (Emphasis added). Thus, under this provision of the agreement, Sunshine is only obligated to seek and present a lender ready, willing and able to *consider* making a loan commitment to MacArthur.

The trial court filed findings of fact and conclusions of law. Four of the unchallenged findings of fact relate to Sunshine's action for permanent financing under the agreement. Rule 299 of the Texas Rules of Civil Procedure provides, in part that "where one or more elements thereof [Sunshine's grounds of recovery] have been found by the trial court, omitted unrequested elements, where supported by evidence, will be supplied by presumption in support of the judgment." Therefore, from our review of the record, we conclude that the evidence supports an omitted finding that Sunshine sought, found and presented to MacArthur a lender ready, willing and able to consider making a loan commitment for permanent financing on the project.

■ We do not agree that MacArthur's liability under the agreement is conditioned on Sunshine's furnishing a written loan commitment from a willing lender. The provision relied on by MacArthur states "that the entire cash fee hereinafter agreed to will become due and payable to Sunshine Exploration Company upon its furnishing the undersigned [MacArthur] with a writing from such a LENDER evidencing its willingness to make said LOAN COMMITMENT." This sentence is preceded by the definitive description of Sunshine's sole obligation under the agreement, which is dis-

cussed above. The questioned provision sets forth the time of payment based on presumptions that MacArthur shall promptly execute a formal application to the lenders with all requested information and that the application will be approved by the lender. The provision, however, does not condition payment of a fee on the presentation of a written loan commitment. We note the absence of words and phrases such as "provided that", "on condition", "in the event of" and other similar language importing a conditional provision.

Assuming arguendo that a written loan commitment is a condition precedent to payment, then MacArthur's failure to promptly file a formal application excused the alleged nonperformance by Sunshine. In *Dockery v. Durham*, 3 S.W.2d 514, 515 (Tex.Civ.App.—Waco 1927, writ dism'd) the broker sued for a commission on a non-consummated loan. The borrower had refused to submit to the lender an abstract of title on the subject property. The court stated the following general principle: "One party to a contract will not be permitted to take advantage of his own wrongful failure to perform his part, thereby rendering performance by the other party impossible, and then escape liability." *Id.* at 519.

The trial court found that on 9 August 1974 Sunshine submitted quotations from two lenders to the appellant, that the loan market on 9 August 1974 required appellant to promptly file a formal application in order to receive a commitment for one of the permanent loans, and that the appellant failed to file a formal application until 17 September 1974. Also, the contracts required the appellant to promptly file a loan application with a lender. The uncontroverted evidence shows that the Lincoln Liberty Life loan quotation was presented to the appellant on 10 August 1974 and the parties agree that the Lincoln Liberty Life loan application was not made until 17 September 1974. The evidence further shows that the loan market was volatile and changing on a daily basis and that this fact was within the knowledge of both parties.

The appellant challenges the legal sufficiency of the evidence to support the trial court's finding that the loan market on 9 August 1974 required it to promptly file a formal application in order to receive a commitment for one of the permanent loans. In deciding the legal sufficiency point, we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to support the finding then we must overrule the challenge and sustain such finding. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In essence, the evidence shows that Sunshine was familiar with the mortgage loan market at the time, that he sought out several lenders to place the loan, that the loan market was volatile and changing on almost a daily basis, and that Sunshine had numerous conversations with officials of MacArthur to get them to move on the loan application with Lincoln Liberty Life. MacArthur did not present evidence to controvert the testimony of Sunshine concerning the loan market posture during the period in question. Thus, we conclude that there was ample evidence of probative force to support the challenged finding.

The appellant attacks that portion of the judgment awarding Sunshine a finder's fee for interim financing on the project. On 17 September 1974 the parties amended the 11 July 1974 mortgage brokerage agreement to include interim financing for the project. In the amendment, MacArthur retained the right to obtain interim financing from its own sources. The agreement specifically provides: "if said interim financing is arranged through our [MacArthur's] sources, then in this event only the fee set forth in our July 11, 1974 agreement will be paid." The undisputed evidence shows that MacArthur obtained interim financing for the project through its own sources. Under the circumstances, we must conclude that Sunshine was not entitled to recover a finder's fee for interim financing for the project.

MacArthur further complains that the trial court miscalculated the fee for permanent loan financing. We agree. The agreement provided for a one and one-half percent of the permanent loan amount with credit for a $500 deposit. The Lincoln Liberty Life permanent loan quotation was for $1,050,000. One and one-half percent of this amount is $15,750. The $500 credit reduced this figure to $15,250. The agreement provides for a reasonable attorney's fee and the parties stipulated to the sum of $2,000 as a reasonable fee. Under our view of the case Sunshine is entitled to recover only the amount of $15,250 as a finder's fee for permanent financing of the project and the amount of $2,000 as reasonable attorney's fees.

In its brief, the appellant states thirteen points of error. For the record, we sustain points of error eleven, twelve and thirteen. We have considered the remaining points of error and find that each presents no reversible error. Our disposition of these points is dispositive of this appeal.

Accordingly, the judgment of the trial court is modified to provide, in lieu of the monetary recovery stated therein, that Howard A. Sunshine, individually and d/b/a Sunshine Exploration Company, recover from MacArthur Park Corporation, the sum of $17,250 with interest at the rate of nine percent (9%) per annum, from 14 July 1978 until paid. As modified, the judgment is affirmed.

Having reduced the award to Howard A. Sunshine from the amount of $21,900 to $17,250, we therefore tax twenty-one percent of the cost against him and seventy nine percent of the cost against MacArthur Park Corporation. Tex.R.Civ.P. 435.

COUNTISS, J., not participating.